# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3618

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Kevin L. Charles, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 18, 2004
Filed: November 30, 2004

_____

Before SMITH, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Kevin Charles pled guilty to possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1), and to a criminal forfeiture charge involving $1607 in cash, pursuant to 21 U.S.C. § 853. He appeals his sentence, arguing that the district court[1] should not have included in its criminal history calculation under the United States Sentencing Guidelines three

_____

[1]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

state-court misdemeanor convictions that resulted in jail time, and that the district court erred in denying his motion for downward departure. We affirm.

The district court sentenced Charles to a term of 92 months' imprisonment, after calculating a sentencing range of 92 to 115 months' imprisonment under the sentencing guidelines. The court arrived at this sentencing range based on a total offense level of 23, and a criminal history category VI. Charles argues that in making its criminal history computation, the district court should not have considered three uncounseled misdemeanor convictions from Douglas County, Nebraska, that resulted in jail sentences. These sentences included two terms of 90 days in jail for driving during suspension on different occasions in 1994, and two days in jail for assault and battery in 1998. He contends that if those three convictions were excluded, then the applicable criminal history score would have been reduced from 14 to 10, which would have lowered his criminal history category from VI to IV, and reduced the applicable sentencing range to 84 to 105 months.

With respect to each disputed conviction, the government produced a one-page record of conviction. Each record is a checklist-style form. Under the "Arraignment and Advisement" section of the form, the first entry reads: "Defendant advised of the nature of the above charges, all possible penalties, and each of the following rights: Counsel; Trial; Jury Trial; Confront Accusers; Subpoena Witnesses; Remain Silent; Request Transfer to Juvenile Court; Defendant's Presumption of Innocence; State's Burden of Proof Beyond Reasonable Doubt." Although this item expressly addresses the right to "Counsel," it is silent on whether that advisement specifically included the right of an indigent defendant to have counsel appointed by the court at no cost to the defendant. *See Gideon v. Wainwright*, 372 U.S. 335 (1963). With respect to each conviction, the box next to this statement is checked to reflect that the advisement was given. The next item states: "Defendant waives each of the above and foregoing rights." Like the advisement, the box next to this item is checked with respect to each of Charles's convictions. A subsequent line reads "Indigency Inquiry

held," but the box corresponding to it is not checked, signifying that such an inquiry was not held.

The Constitution "requires federal courts to permit a collateral attack on an earlier state conviction during federal sentencing when the defendant asserts the state court violated the defendant's right to appointed counsel." *United States v. Jones*, 28 F.3d 69, 70 (8th Cir. 1994) (per curiam). Charles argues that he was deprived of his right to appointed counsel with respect to three state court misdemeanor convictions that resulted in jail time, *see Scott v. Illinois*, 440 U.S. 367, 373-74 (1979), and that his convictions allegedly obtained in violation of *Scott* cannot be used to enhance his punishment. The government argues that Charles's claim is foreclosed by *Nichols v. United States*, 511 U.S. 738 (1994), where the Supreme Court held that "an uncounseled conviction valid under *Scott* may be relied upon to enhance the sentence for a subsequent offense, even though that sentence entails imprisonment." *Id*. at 746-47. The government, however, misreads *Nichols*. The Court's holding was limited to the use of "an uncounseled misdemeanor conviction, valid under *Scott* because *no prison term was imposed*." *Id*. at 749 (emphasis added). Charles disputes the use of convictions as to which a jail term *was imposed*, and as to which he thus had a constitutional right to counsel under *Scott*.

At oral argument, Charles clarified that his sole argument is that the court records presented to the district court supposedly demonstrate on their face that he "was denied appointed counsel." In other words, Charles did not wish to testify or submit other evidence to show that he was not informed of his right to appointed counsel or that he was indigent at the time of the convictions. He relies exclusively on the records. The records show that Charles was convicted of the misdemeanor offenses, and our cases make clear that once the government carries its initial burden of proving the fact of conviction, it is the defendant's burden to show his prior convictions were not constitutionally valid. *United States v. Valdez*, 146 F.3d 547,

552 (8th Cir. 1998); *United States v. Early*, 77 F.3d 242, 245 (8th Cir. 1996) (per curiam).

We conclude that Charles failed to carry his burden. It is true that the checklists do not specifically indicate that Charles was advised of his right to appointed counsel, and they show that no indigency inquiry was held. Charles asks that we require the district court to infer from this evidence that he was not advised of his right to appointed counsel. But another reading of the documents is at least equally plausible. It may well be that the checklist simply fails to spell out all the details of the waiver colloquy, and that the advisement regarding appointed counsel is subsumed within the general reference to the defendant's right to "Counsel." In that case, if Charles informed the state court of his desire to waive the right to appointed counsel, then an inquiry into Charles's indigency would have been unnecessary.

Charles offered no additional evidence to show that the court failed to advise him that his constitutional "right to counsel" included the right to appointed counsel. No transcripts were offered into evidence, and Charles expressed no desire to testify concerning what he was told in the state court proceedings. Under those circumstances, the record supported the district court's decision to assess criminal history points based on the misdemeanor convictions.

We also observe that with respect to the two misdemeanor convictions for driving during suspension, the box next to "Defense Counsel" in the "Appearances" section was checked, thus indicating that despite his current protestations, Charles was actually represented by counsel. In light of this evidence, we find it particularly difficult to credit Charles's argument that his right to appointed counsel was infringed in connection with those convictions. *See Jones*, 28 F.3d at 70; *State v. Trackwell*, 547 N.W.2d 471, 477 (Neb. 1996). The third disputed conviction for assault and battery, moreover, did not even affect Charles's criminal history score. Under USSG § 4A1.1(c), only four criminal history points may be assessed for a prior sentence of

fewer than 60 days. The assault and battery conviction counted for one point under § 4A1.1(c), but Charles already had accumulated more than four such points based on other undisputed convictions. (*See* PSR ¶ 61). Thus, there would be no change to Charles's criminal history category and sentencing range even if the assault and battery conviction were excluded.

Charles's alternative argument that the district court should have departed downward from the applicable guideline range is without merit. The district court specifically acknowledged its authority to depart under appropriate circumstances, but concluded that the circumstances of this case were not sufficiently atypical to warrant a departure. (Tr. 51-52). The district court's discretionary decision not to depart is unreviewable. *E.g.*, *United States v. Thompson*, 367 F.3d 1045, 1047 (8th Cir. 2004) (per curiam).

The judgment of the district court is affirmed.

_____